## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

VERNIECE RORIE

    Plaintiff,

      v.

BOARD OF EDUCATION OF
CHARLES COUNTY,

KIMBERLY HILL,
(in personal capacity)

    and

AMY HOLLSTEIN,
(in personal capacity)

    Defendants.

Civil Action No.

TDC 20 CV 3173

## **COMPLAINT**

COMES NOW Plaintiff through undersigned counsel states as follows:

## **JURISDICTION AND VENUE**

1. This is an action for declaratory relief; injunctive relief, damages and to secure protection of and to redress deprivation of equal protection rights secured by the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

2. This is an action for declaratory relief; injunctive relief, damages and to secure protection of and to redress deprivation of rights secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

3. This is an action for declaratory relief; injunctive relief, damages and to secure protection of and to redress deprivation of rights secured by The Age Discrimination in Employment Act of 1967.

4. This is an action for declaratory relief; injunctive relief, damages and to secure protection of and to redress deprivation of rights secured by 42 U.S.C. § 1983.

5. Venue lies in this District pursuant to 42 U.S.C. § 2000e-5(f)(3) and because the events and occurrences giving rise to this action occurred within this judicial district.

## PENDANT CLAIMS

6. This is an action for declaratory relief; injunctive relief, damages and to secure protection of and to redress deprivation of rights secured by The State of Maryland's defamation law.

## PARTIES

7. Verniece Rorie is a current employee of Charles County Public Schools.

8. The Charles County Public Schools is located in Charles County, Maryland.

9. Kimberly Hill is the Superintendent of Charles County Public Schools.

10. Amy Hollstein is the Deputy Superintendent of Charles County Public Schools.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff Verniece Rorie filed a timely complaint with the Equal Employment Opportunity Commission, Charge No. 531-2020-01267.  On August 3, 2020, EEOC issued a Notice of Right to Sue letter to Ms. Rorie.

## STATEMENT OF CLAIM

12. Verniece Rorie is currently a vice principal with the Charles County Public School System assigned to the F. B. Gwynn Educational Center as of December 2, 2019.

13. Ms. Rorie's date of birth is April 23, 1959 (61 years of age).

14. Ms. Rorie is an African American woman.

15. Prior to being transferred to F. B. Gwynn Educational Center, Ms. Rorie was the principal of Gale-Bailey Elementary School in CCPS for five (5) years.

16. Ms. Rorie was hired by the CCPS in 2006 as a vice principal.

17. Ms. Rorie has held the positions of both vice principal and principal with CCPS and has consistently been rated "effective" on her annual job performance evaluations.

<u>**The October 29, 2019 Playground Incident**</u>

18. On October 29, 2019, an incident occurred on the playground of Gale-Bailey Elementary School.

19. The 4th Grade Recess begins at 2:15 p.m. and ends at 2:45 p.m.  Three 4th grade boys were playing a game of tag with three 4th grade girls.

20. At some point during the recess, a 4th grade boy made sexual comments to a 4th grade girl and engaged in sexual behavior.

21. At approximately 3:00 p.m., three of the 4th grade girls came to Vice Principal Timothy Rosin's office to report the playground incident.

22. Vice Principal Rosin was in charge of disciplinary procedures, and he took charge of the playground incident until the matter was resolved approximately a month later.

23. Vice Principal Rosin immediately initiated an investigation by having each of the three girls complete a separate Incident Statement Sheet in his office.

24. Vice Principal Rosin also summon the three 4th grade boys to his office and had each boy complete a separate Incident Statement Sheet.

25. Dismissal time was 4:00 p.m., but the three 4th grade girls had not completed their Incident Statement Sheets.

26. Vice Principal Rosin instructed the girls to complete their Incident Statement Sheets when they returned to school the following day.

27. All of the girls and boys left Vice Principal Rosin's office in order to board school buses that would take them home.

28. Vice Principal Rosin instructed the students to tell their parents about the playground incident.

29. Vice Principal Rosin called the students' parents and left messages for the parents he could not reach.

30. Vice Principal Rosin also contacted Officer Caballero, the school resource officer (SRO), to notify him of the playground incident.

31. At approximately 5:30 p.m., Vice Principal Rosin informed Principal Rorie about the playground incident.

32. The following morning, on October 30, 2019, two school resource officers, Officers Caballero and Plunkett, arrived at Gale-Bailey Elementary School and began their investigation of the playground incident.

33. Officer Caballero questioned the students about the playground incident.

34. Officers Caballero and Plunkett also spoke to the students' parents who were present at the school.

35. Principal Rorie was on sick leave and not at the school that day.

36. Charles County Public Schools did not have a written policy for dealing with the incident that occurred on the playground.

37. Principal Rorie contacted her immediate supervisor, Assistant Superintendent Linda Gill, to discuss the playground incident and get instructions on how to proceed.

38. Dr. Gill instructed Principal Rorie to contact the school district's Title IX coordinator, Kathy Kiessling, and notify her about the playground incident.

39. Dr. Gill also instructed Principal Rorie to contact the parents of the three 4th grade boys to inform them that additional disciplinary action could follow the SRO investigation.

40. Finally, Dr. Gill instructed Principal Rorie to consider suspending the three boys and moving them to another class.

41. Principal Rorie fully followed Dr. Gill's instructs.

42. Principal Rorie notified Title IX Coordinator Kathy Kiessling of the playground incident and sent her a copy of each student's statement.

43. On October 31, 2019, school resource officers, Caballero and Plunkett, continued their investigation by questioning more students and talking to parents.

44. On November 1, 2019, Officer Caballero informed Principal Rorie that a 4th degree sexual assault charges would be filed against one of the 4th grade boys.

45. Principal Rorie spoke to the Title IX coordinator, Ms. Kiessling, about transferring the boy to another school.

46. Ms. Kiessling suggested to Principal Rorie that the 4th grade boys be suspended.

47. Principal Rorie contacted the parents of each of the three 4th grade boys to inform them that their son would be suspended for three days.

48. Some Gale-Bailey Elementary School parents were expressing concern that the school district had not notified them about the October 29, 2019 playground incident.

49. Principal Rorie contacted the school district's public relations liaisons, Katie O'Malley-Simpson and Shelley Mackey, to inquire about issuing a community letter that would inform parents about the October 29, 2019 playground incident.

50. Ms. O'Malley-Simpson told Principal Rorie that Deputy Superintendent Amy Hollstein instructed them not to issue a letter concerning the October 29, 2019 playground incident.

51. On November 4, 2019, the three 4th grade boys were suspended.

52. Officer Caballero provided Principal Rorie with a police report that listed the charge against one of the 4th grade boys (4th degree sexual assault).

53. At Gale-Bailey Elementary School, the investigation of the playground incident and subsequent disciplinary action proceeded without incident.

54. On November 13, 2019, Principal Rorie submitted an Incident Report that covered the timeline from the October 29, 2019 playground incident to November 4, 2019.

55. However, at the school district level, parents were concerned that they were not receiving information about the October 29, 2019 playground incident from the school district.

56. Several of these parents hired a lawyer to represent them against the school district.

57. The outrage was based on the school district's decision to restrict communication about the October 29, 2019 playground incident.

<u>**Sexual Abuse at Benjamin Stoddart Middle School in 2017**</u>

58. In 2017, Carlos Deangelo Bell, a teaching assistant at CCPS's Benjamin Stoddert Middle School in Waldorf, Maryland, was charged with sexually abusing at least 24 children.

59. Mr. Bell was HIV positive.

60. Superintendent Kimberly Hill acknowledged that the school system waited for six months before informing Stoddart parents about the police investigation involving Mr. Bell's sexual abuse of children.

61. Mr. Bell assaulted several boys on Stoddert property.

62. According to the Washington Post, a Stoddart parent said, "…many students were aware to some degree of Bell's inappropriate behavior with students, including wrestling with boys on the floor of his classroom or entering the students' locker room."

Shapiro, Rees., "Parents confront Maryland school leaders after sex abuse allegations," *Washington Post*, August 17, 2017.

https://www.washingtonpost.com/local/education/parents-question-md-school-leaders-after-child-sex-abuse-allegations/2017/08/17/34bf8f82-837e-11e7-b359-15a3617c767b_story.html

63. In August 2017, parents called for Superintendent Hill to resign during a school board meeting.

64. The principal of Stoddert, Kenneth Schroeck, who is white and in his early 50's, was transferred to an administrative role.

65. Principal Schroeck was neither demoted nor disciplined.

### Title IX Claim

66. Gale-Bailey parents continued to express concern that the school district did not notify them of the October 29, 2019 playground incident.

67. A group of parents hired a lawyer to represent them against the school district.

68. On or around November 25, 2019, the lawyer for the parents held a news conference outside of the Charles County Public Schools headquarters to address the playground incident at Gale-Bailey Elementary School.

69. As occurred in 2017, parents called for Superintendent Kimberly Hill to step down.

70. The lawyer for the parents threatened to file a Title IX claim against the school system with the Department of Education.

### Ms. Rorie's Suspension and Demotion

71. On November 26, 2019, Principal Rorie received a call from HR Director Nicole Majors instructing her to report to HR at 1:30 p.m. for a meeting.

72. Principal Rorie asked HR Director Majors whether the meeting was about a disciplinary matter, and Ms. Majors responded that the meeting was not about a disciplinary matter.

73. Present at the meeting was Deputy Superintendent Amy Hollstein and HR Director Majors.

74. Deputy Superintendent Hollstein informed Principal Rorie that she was being removed from Gale-Bailey Elementary School and reassigned to F. B. Gwynn Center as a vice principal.

75. In addition, Deputy Superintendent Hollstein informed Principal Rorie that she would receive a five (5) day suspension without pay.

76. Deputy Superintendent Hollstein told Principal Rorie that the reason for the action was 1) the community had lost confidence in her leadership, and 2) an anonymous complaint accused Principal Rorie of grade fraud.

77. Having worked for Charles County Public Schools for fourteen (14) years, Principal Rorie had witnessed African American employees being targeted with unfounded allegations, such as, grade fraud.

78. Principal Rorie immediately defended herself against Deputy Superintendent Hollstein's allegation of grade fraud, but Deputy Superintendent Hollstein seemed to have her mind make up and refused to listen.

79. On December 2, 2019, Superintendent Hill suspended Principal Rorie for five days without pay.

80. Ms. Rorie filed discrimination complaints with the local NAACP and the Equal Employment Opportunity Commission (EEOC).

## Unfounded Accusation of Grade Fraud

81. In March 2019, a SOAR program special education teacher, who had been assigned to Gale-Bailey Elementary School, left on extended medical leave.  This special education teacher never returned.  And, the school district was unable to find a certified classroom teacher for the SOAR program to replace the teacher who left.

82. In September 2019, Arden Sotomayer, CCPS's Director of Special Education instructed Principal Rorie to inform Gale-Bailey's SOAR parents that their children would be assigned to three temporary special educators who would provide the students with specially designed instruction while the school district continued its search for a qualified SOAR program teacher.

83. In November 2019, a qualified SOAR program teacher had still not been found, but academic grades were due for eight autistic students assigned to the SOAR program.

84. With the approval of Director of Special Education Sotomayer, Principal Rorie organized
a group of Gale-Bailey special education teachers and tasked them with collaboratively
assigning academic grades to the eight autistic students who had been assigned to them
that fall semester.  The group accomplished their task of assigning academic grades to the
eight autistic students.  Normally, the task of assigning grades to the eight autistic
students would have been performed by a qualified SOAR program teacher.

### Count I – Title VII of the Civil Rights Act (Race)

85. Ms. Rorie incorporates by reference all of the preceding paragraphs.

86. Charles County Public Schools exhibited disparate treatment based on Ms. Rorie's race
(African American) when it: 1) demoted her from principal to vice principal and 2)
suspended her without pay for five (5) days.

87. The white principal of CCPS's Benjamin Stoddert Middle School, Kenneth Schroeck,
was neither demoted nor suspended under similar and possibly more severe
circumstances.  In both instances, the superintendent in charge of Charles County Public
Schools was Kimberly Hill, who is white.

88. In *Haynes v. Waste Connections, Inc.*, 922 F. 3d 219, 223-224 (4th Cir. 2019), the Fourth
Circuit stated:

"Turning first to the issue of an appropriate comparator, this Court has emphasized
that a comparison between similar employees "will never involve precisely the
same set of work-related offenses occurring over the same period of time and
under the same sets of circumstances." *Cook v. CSX Transp. Corp.*, 988 F.2d 507,
511 (4th Cir. 1993). Rather, to establish a valid comparator, the plaintiff must
produce evidence that the plaintiff and comparator "dealt with the same

supervisor, [were] subject to the same standards and ... engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Haywood v. Locke*, 387 F.App'x 355, 359 (4th Cir. 2010) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992))."

## Count II – Age Discrimination in Employment Act (ADEA)

89. Ms. Rorie incorporates by reference all of the preceding paragraphs.

90. Charles County Public Schools exhibited disparate treatment based on Ms. Rorie's age (DOB April 23, 1959 - 61 years of age at time of incident) when it: 1) demoted her from principal to vice principal and 2) suspended her without pay for five (5) days.

91. The principal of CCPS's Benjamin Stoddert Middle School, Kenneth Schroeck, (DOB May 17, 1967 – 50 years of age at time of incident) was neither demoted nor suspended under similar and possibly more severe circumstances.  In both instances, the superintendent in charge of Charles County Public Schools was Kimberly Hill, who is white.

## Count III – 42 U.S.C. § 1983

92. Ms. Rorie incorporates by reference all of the preceding paragraphs.

93. Superintendent Kimberly Hill (in her personal capacity) violated Principal Rorie's civil rights under Title VII of the Civil Rights Act of 1964 (race) and The Age Discrimination in Employment Act of 1967 (age) when she: 1) demoted Ms. Rorie from principal to vice principal and 2) suspended Ms. Rorie for five (5) days without pay.  Superintendent Hill did not demote or suspend Principal Schroeck under similar or even more severe circumstances.  Superintendent Hill is white and under the age of sixty (60).

94. Deputy Superintendent Amy Hollstein (in her personal capacity) violated Principal Rorie's civil rights under Title VII of the Civil Rights Act of 1964 (race) and The Age Discrimination in Employment Act of 1967 (age) when she: 1) demoted Ms. Rorie from principal to vice principal and 2) suspended Ms. Rorie for five (5) days without pay. Deputy Superintendent Hollstein did not demote or suspend Principal Schroeck under similar or even more severe circumstances. Deputy Superintendent Hollstein is white and under the age of sixty (60).

## Count IV – Defamation

95. Ms. Rorie incorporates by reference all of the preceding paragraphs.

96. In a June 16, 2020 letter to the Equal Employment Opportunity Commission (EEOC), Charles County Public Schools alleged that Ms. Rorie was issued a five day suspension without pay for "misconduct in office and willful neglect of duty". In response to: 1) the October 29, 2019 playground incident and 2) the absence of a SOAR qualified teacher to assign academic grades to eight autistic students in November 2019, Ms. Rorie sought advice from her supervisors, Executive Director of Schools Linda Gill and Director of Special Education Arden Sotomayer, respectively, and carried out their explicit instructions. By June 2020, seven (7) months later, the school district knew that Ms. Rorie had not engaged in "misconduct in office and willful neglect of duty." Nonetheless, the school district informed the EEOC that Ms. Rorie had engaged in "misconduct in office and willful neglect of duty."

## Count V – Title VII of the Civil Rights Act (Retaliation)

97. Ms. Rorie incorporates by reference all of the preceding paragraphs.

98. In a June 16, 2020 letter to the Equal Employment Opportunity Commission (EEOC),
    Charles County Public Schools alleged that Ms. Rorie was issued a five day suspension
    without pay for "misconduct in office and willful neglect of duty".

99. Attached to the June 16, 2020 letter from Charles County Public Schools to the EEOC was a
    letter dated December 2, 2019 that was allegedly "hand delivered" to Ms. Rorie.  However,
    Ms. Rorie continues to work for Charles County Public Schools and never received the letter
    and was never made aware of the letter.

100. The December 2, 2019 letter was from Superintendent Hill but was not signed by
    Superintendent Hill or anyone else.  The letter was disciplinary in nature and accused Ms.
    Rorie of "misconduct in office and willful neglect of duty".

101. The December 2, 2019 letter appeared to have been placed in Ms. Rorie's personnel file
    without her knowledge.

### Count VI – Age Discrimination in Employment Act (Retaliation)

100. Ms. Rorie incorporates by reference all of the preceding paragraphs.

### Emotional Pain and Suffering

101. Ms. Rorie continues to experience emotional pain and suffering, inconvenience, mental
anguish, loss of enjoyment of life, and other pecuniary and non pecuniary losses.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays this court:

    (a) Issue a declaratory judgment that Defendant's acts, polices, practices and

    procedures complained of herein-violated Plaintiff's rights as secured by the Equal

    Protection Clause of the Fourteenth Amendment to the U.S. Constitution; Title VII of

    CRA; Age Discrimination in Employment Act; 42 U.S.C. § 1983; the State of

Maryland's defamation law and, Order Defendant to make whole Plaintiff who has been

adversely affected by the policies and practices described herein in an amount to be

shown at trial and other affirmative relief;

(b) Compensate the Plaintiff for loss pay and benefits, with interest;

(c) Retain jurisdiction over this action to assure full compliance with the orders of

the court and with applicable law and require defendant to file such reports as

the court deems necessary to evaluate compliance;

(d) To award them reasonable attorney's fees and costs of this action;

(e) Award Plaintiff compensatory and punitive damages; and,

(f) Grant such additional relief as the court deems just and proper; and

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendant

in the amount of five hundred thousand dollars ($500,000.00).

## JURY DEMAND

Plaintiff demands a trial by jury.


Respectfully submitted,


Bryan A. Chapman, Esquire  Bar No.012274
Law Office of Bryan A. Chapman
1629 K Street, N.W., Suite 300
Washington, D.C. 20006

(202) 508-1499
bchapman@baclaw.com

Attorney for Plaintiff